In the Matter of the Estate of ROBERT R. WALBRIDGE, Deceased.

Surrogate's Court, New York County, January 26, 1942.

■■■■■■■■■■■■

*Mitchell, Taylor, Capron & Marsh* [*Clinton C. Swan* and *Allyn Dillard* of counsel], for the petitioner.

*Willkie, Owen, Otis & Bailly* [*William FitzGibbon* and *Mark P. Stumpf* of counsel], for Lucie R. Walbridge and others, respondents.

*McCanliss & Early*, for The Florida National Bank and Trust Company at Miami, respondent.

*Chauncey L. Grant*, for Blanche W. Walbridge, general guardian of Dorothy W. Walbridge, infant.

FOLEY, S. This is a trustee's accounting in which a construction of the will is sought. The question of construction involves the validity and effect of the exercise of a power of appointment. The decedent died on July 29, 1935, a resident of New York county, and his will was admitted to probate in this court. The will created a trust of the residuary estate for the benefit of the testator's widow during her life. A power of appointment was conferred upon the widow in the following language: " * * * and upon the death of the survivor of her and myself to distribute the principal of my said residuary estate among such persons and corporations, and in such proportions, as my said wife may, by her Last Will and Testament direct, and to distribute any part (or all, as the case may be) not effectively directed by her Will in equal shares among my nephews and nieces then surviving (such surviving nephews and nieces to take such equal shares *per capita*) and the issue then surviving of any nephew or niece of mine who shall then be dead (such issue, however, to take in equal shares *per stirpes* the share to which such deceased nephew or niece would have been entitled had he or she then survived)."

Subsequent to the death of the testator his widow moved to Florida where she died on March 3, 1941. Her will, which was executed in Florida and has been admitted to probate there, specifically refers to the power of appointment and provides for the disposition of the appointive fund.

By separate paragraphs of her will the donee has provided for outright gifts from the appointive fund to six individuals. These gifts total $20,500. The balance of the appointive fund is disposed of by the donee in the following language:

" IX. Further exercising the power of appointment given to me in the will of my late husband, I give and bequeath to The Florida National Bank and Trust Company at Miami, in trust, the entire estate not otherwise disposed of herein of my late husband, Robert R. Walbridge, consisting of cash, stocks, bonds and other securities now held by the City Bank Farmers' Trust Company of New York City, as Trustee, under the will of my late husband, said cash, stocks, bonds and other securities to be held by said The Florida National Bank & Trust Company at Miami in trust for the uses and purposes hereinafter set forth.

" I direct the said The Florida National Bank & Trust Company at Miami, to take over and hold said cash, stocks, bonds and other securities and collect the profits, income and revenue therefrom and to place said profits, income and revenue in the Special Fund to be established by my said Trustee, and out of said Special Fund I direct the said The Florida National Bank & Trust Company at Miami to pay to my sister, Grace Randall Bowman, the sum of One Hundred and Fifty Dollars per month on the first day of each month so long as she shall live.

" After long and careful consideration of the circumstances surrounding my said sister I have come to the deliberate conclusion that the sum of One Hundred and Fifty Dollars per month is ample to provide for her care and comfort. A larger sum would in my judgment be unwise. If, however, by reason of illness or accident she should require additional money to pay hospital or doctor's bills, then I direct my said Trustee out of said Special Fund to pay such bills when duly certified by affidavit of said hospital officials or of said physician rendering her such medical service. No payments are to be made for my said sister's account except as above specified and only out of said Special Fund.

" Upon the death of my said sister I direct The Florida National Bank & Trust Company at Miami to arrange for her burial and to defray the funeral expenses out of said Special Fund if sufficient for that purpose, and, if not, then out of any funds in its possession.

" If at the death of my sister any monies remain in said Special Fund, I direct that such monies be paid over to the nieces and nephews of my late husband as hereinafter specified.

" X. Upon the death of my said sister and further exercising the power of appointment given to me by the will of my late husband I give and bequeath all the property held in trust for my said sister

and also all monies remaining in said Special Fund to such of my husband's nieces and nephews as shall survive me (such surviving nephews and nieces to take in equal shares *per capita*) and the issue me surviving of any nephew or niece of my said husband who shall have predeceased me (such issue, however, to take in equal shares *per stirpes*, the share to which said deceased nephew or niece would have been entitled had he or she survived me)."

The donee's executor and trustee, a Florida trust company, contends that the exercise of the power of appointment is valid in its entirety and that all of the appointive fund should be transferred to it in Florida.

The alternative remaindermen in the donor's will, who are his nephews and nieces, contend that the outright gifts of the appointive fund are valid and should be paid by the accounting trustee directly to the appointees. They contend, however, that the purported " further " exercise of the power of appointment in the ninth and tenth paragraphs of the donee's will under which the Special Fund for the benefit of the donee's sister is to be set up is void in its entirety. An alternative argument is made that the purported exercise of the power is void to the extent that it necessitates an unlawful accumulation and that in no event is this exercise of the power valid beyond the provision for the payment of $150 a month from income to the beneficiary of this secondary trust. An incidental question has arisen as to the reservation by the accounting trustee of sufficient funds to meet possible Federal estate taxes. This question arises because of the fact that the appointive fund is approximately $200,000 while the gross estate of the donee is approximately $8,500.

In testing the validity and effect of the exercise of a power of appointment the fundemental rule is that the law of the domicile of the donor governs all questions relating to the validity and effect of the exercise of the power and the method of distribution of the appointive fund. The wills of the donor and donee must be read together as part of the same instrument. (*Bishop* v. *Bishop*, 257 N. Y. 40; *Matter of Harbeck*, 161 id. 211; *Hillen* v. *Iselin*, 144 id. 365; *Dammert* v. *Osborn*, 140 id. 30; *Matter of Rogers*, 249 App. Div. 238; *Hirsch* v. *Bucki*, 162 id. 659; *Matter of Harriman*, 124 Misc. 320; affd., 217 App. Div. 733.)

The first application of this rule relates to the six outright gifts of the appointive fund made by the donee of the power. These gifts are clearly valid under the law of this State. The executor of the donee takes no interest whatsoever in these gifts. This property passes directly from the trustee of the donor to the appointees. (*Hirsch* v. *Bucki, supra; Matter of Rolston*, 170 Misc.

548; *Matter of Beaumont,* 147 id. 118; *Matter of Terwilligar,* 142 id. 249.)

In applying the fundamental rule to the remaining provisions of the donee's will relating to the exercise of the power the question is presented as to whether or not the language of the donor's will creating the power authorized the appointment of an estate of less than a fee. (*Matter of Kennedy,* 279 N. Y. 255.) Here the power is conferred in broadest terms and not circumscribed by any restrictive words. Moreover, the power is general and not special. The decision in *Matter of Kennedy* (*supra*) has no application to the facts of this case. (*Matter of Jackson,* 175 Misc. 882; affd., 262 App. Div. 997; leave to appeal denied, 287 N. Y. 854; *Matter of Wildenburg,* 174 Misc. 503.)

The principal attack upon the validity of the appointmen; for the benefit of the donee's sister is that the provisions of the donee's will did not create a trust permitted under section 96 of the Real Property Law and further that if such a trust is created it provides for an illegal accumulation and is void.

Although the language of the donee's will disposing of the balance of the appointive fund is inartificial, nevertheless the intention to create a further trust of this property is clear. The donee has (1) named a trustee, (2) identified the subject-matter of the trust, and (3) designated the beneficiary and remaindermen. The absence of an explicit direction to pay over income is not necessarily fatal to validity. (*Matter of Black,* N. Y. L. J. Nov. 13, 1940, p. 1525; affd., 262 App. Div. 996.)

Adverting to the language of the donee's will it is apparent that although she attempted to create a secondary trust of the appointive fund her will clearly provides for an unlawful accumulation of the income from this trust. Substantially the donee has directed that the balance of the appointive fund be held by the trustee who is to collect the income and pay the beneficiary $150 a month for life, and to defray the necessary hospital and medical expenses of the beneficiary. There is a further direction to the trustee to pay funeral expenses of the beneficiary. These directions in themselves violate no provisions of the law of this State. The failure of the donee to direct distribution of all of the income and her obvious intention that such income be accumulated during the continuance of the trust do violate the law of this State. (Pers. Prop. Law, § 16; *Morris* v. *Morris,* 272 N. Y. 110; *Matter of Hall,* 155 Misc. 904.)

This case is clearly distinguishable from the line of cases holding valid a direction to apply income for the support of the beneficiary. In these cases the entire income is given to the beneficiary and

the unexpended balance not applied by the trustee for the support of the beneficiary at all time remains his or her property and passes in his or her estate by will or intestacy. (*Hamilton* v. *Drogo,* 241 N. Y. 401; *Bloodgood* v. *Lewis,* 209 id. 95; *Hill* v. *Guaranty Trust Co.,* 163 App. Div. 374; *Matter of Littman,* 165 Misc. 285.) Here there is no gift of the entire income to the beneficiary but rather a specific limitation on the amount payable to the beneficiary with an obvious intent that the balance should be accumulated. The donee's will clearly provides for a gift of the accumulations to the remaindermen of the secondary trust.

The contention by the executor and trustee of the donee that these provisions should be given effect because they are valid in Florida where the secondary trust must be administered raises a point not considered by counsel.

This contention ignores the fundamental rule that the law of this State governs all questions as to the validity and effect of the exercise of the power. The fact is lost sight of that the property now accounted for is not the property of the donee but of the donor and must remain the property of the donor until it absolutely vests in some person or corporation. A donee with a power to appoint by will is a mere agent of the donor. Until absolute vesting the property remains subject to the jurisdiction and control of the courts of the domicile of the donor. (*Matter of New York Life Ins. & Trust Co.,* 139 N. Y. Supp. 695; affd., 157 App. Div. 916; affd., 209 N. Y. 585; *Bishop* v. *Bishop, supra; Matter of Harbeck, supra; Matter of Wadsworth,* 250 App. Div. 11; affd., 275 N. Y. 590; *Matter of Rogers,* 249 App. Div. 238; 250 id. 26; *Hirsch* v. *Bucki, supra; Matter of Bradford,* 165 Misc. 736; affd:, 254 App. Div. 828; *Matter of Crittenden,* N. Y. L. J. May 2, 1941, p. 1959; *Matter of Harriman, supra.*)

The necessity for retention by this court of jurisdiction and control over the appointive fund until absolute vesting is graphically illustrated by the decision of Surrogate FOWLER in *Matter of New York Life Ins. & Trust Co. (supra)* and the affirmance of that case by the Court of Appeals. In that case the donor was a resident of New York county and the donee a resident of Italy. Surrogate FOWLER discussed the problem at great length and held that the law of this State governed all questions as to the validity and effect of the exercise of the power. In reaching this conclusion he cited with approval *Sewall* v. *Wilmer* (132 Mass. 131), commenting, however, that that case went further than it was necessary for him to do in making his decision. In *Sewall* v. *Wilmer (supra,* 136, 137) in commenting upon this problem the court stated: " But the property of which Mrs. Wilmer has a power of appointment is

not her property, but the property of her father; and the instrument executed by her takes effect, not as a disposition of her own property, but as an appointment of property of her father under the power conferred upon her by his will. ·The domicil of the testator whose property is in question is therefore the domicil of the father. The property is held by trustees residing and appointed in Massachusetts, and must be distributed here, and the trustees cannot be compelled to account for it in Maryland or in any other State even if they should be personally found there."

In affirming the decision in *Matter of New York Life Ins. & Trust Co. (supra)*, the Court of Appeals commented on the opinion of Surrogate FOWLER and stated that his reasoning was regarded as sound. The court further stated that it preferred to rest its decision squarely on the ground that the construction and effect of the exercise of the power was governed by the law of the domicile of the donor and of the situs of the property. The court further stated: " We adopt the rule applied in Massachusetts and concur in the reasoning of Chief Justice GRAY in support of it in *Sewall v. Wilmer*."

In *Matter of Bradford (supra)* the donor of the power was a resident of Massachusetts. The donee died a resident of New York county and by his will created a secondary trust of the appointive fund naming the trustees in his will. A representative of one of the trustees named in the donee's will attempted to file an accounting for the appointive fund in this court. The determination that the proper place to account for the fund and for the administration of the trust was Massachusetts, the domicile of the donor, was affirmed by the Appellate Division in this department without opinion.

Many cases have been cited in which the administration of a trust in other than the domicile of the donor was approved. None of these cases is in point. Roughly, these cases are divided into (a) situations where a testator specifically indicated an intention that a private trust should be administered in some other State (*Matter of James*, 167 Misc. 142; affd., 254 App. Div. 723; *Matter of McAuliffe*, 167 Misc. 783; *Matter of Vanneck*, 158 id. 704; *Matter of Siems*, N. Y. L. J. Aug. 16, 1930, p. 2266), and (b) situations involving the administration of charitable trusts in other jurisdictions.

The reasons for sustaining the validity of charitable trusts to be administered in other jurisdictions are clearly set forth in *Hope v. Brewer* (136 N. Y. 126). Comity, public policy and practicability of administration require the transmittal of the trust funds to the foreign jurisdiction. The validity of such a trust created under the will of a donee of a power is not at variance with the rule that

the law of the domicile of the donor must control until absolute vesting. A trust for a charitable purpose of its very nature is the equivalent of absolute vesting of the trust property. The trust is in perpetuity and no part of the trust fund remains unbequeathed. (*St. Joseph's Hospital* v. *Bennett*, 281 N. Y. 115; *Matter of Jackson, supra.*)

Accordingly I hold that the secondary trust created by the will of the donee must be administered under the jurisdiction and supervision of this court. The trustee named in the donee's will being a Florida corporation, cannot qualify as a fiduciary in this State. (Banking Law, § 131, subd. 3.)

As stated above, invalidity attaches to this secondary trust only in so far as the accumulation of income is provided for. The provisions of the donee's will creating a further trust in the appointive fund and directing the payment of $150 a month from the income to the beneficiary will be sustained. The provisions providing for the application of further income to the beneficiary in certain contingencies will likewise be sustained. As all of the income from the trust is not validly disposed of this income passes to those presumptively entitled to the next eventual estate. (Real Prop. Law, § 63.)

An appropriate application for the appointment of a substituted trustee should be instituted so that the corpus of the secondary trust of the appointive property may be delivered to such trustee when appointed.

In view of the fact that the secondary trust is to be administered in this jurisdiction the subordinate question as to the reservation of funds to insure payment of estate taxes becomes to some extent academic. On the consent of the interested parties the accounting trustee may reserve sufficient funds to secure payment of the taxes. In the alternative, if the parties so desire, the decree may provide for a reservation of sufficient funds to insure payment of the taxes on the outright payments and that the balance of the appointive fund be turned over to the substituted trustee of the secondary trust with the specific direction that so much of the fund as may be necessary to pay estate taxes should be applied for such purpose by the substituted trustee.

Submit decree on notice construing the will and settling the account accordingly.